# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

| | |
|---|---|
| Edward Lee Cross,<br><br>         Petitioner,<br><br>vs.<br><br>Robert M Stevenson, III, Warden of<br>Broad River Correctional Institution,<br><br>         Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A No.: 1:11-2874-RBH-SVH<br><br><br>REPORT AND RECOMMENDATION |

Petitioner Edward Lee Cross is an inmate at the Broad River Correctional Institution of the South Carolina Department of Corrections. He filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the following motions: (1) Respondent's motion for summary judgment [Entry #35]; (2) Petitioner's motion for summary judgment [Entry #52] and motion for hearing [Entry #51]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by June 28, 2012. [Entry #36]. After Petitioner asked for two extensions [Entry #38, #46], which the court granted [Entry #39, #47], he filed a timely response on August 24, 2012. [Entry #49]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion be granted and Petitioner's motions be denied.

I.     Factual Background

According to the evidence at trial, Petitioner conspired with his co-defendant, Derrick Jackson, to buy a kilo and a half of cocaine from a Mexican named "Junior." Pursuant to the conspiracy, Jackson drove the Petitioner's GMC Yukon truck to Georgia to leave it with Junior in exchange for the drugs. Jackson's girlfriend followed him in a different vehicle for the return trip because the truck was to be held as security, as Petitioner and Jackson did not have the purchase price of $34,500 for the drugs they were buying from Junior. The agreement involved Petitioner cooking the cocaine into crack cocaine and selling it. After paying for the cocaine, Petitioner was to get his Yukon truck back, and he and Jackson would split the profit from selling the drugs. Petitioner went to Jackson's residence when the latter returned from Georgia with the cocaine. Petitioner took a kilogram of cocaine to cook it into crack cocaine, and sold John Stevenson $7,000 worth of cocaine.

Petitioner had previously worked for the York County Multijurisdictional Drug Enforcement Unit (YCMDEU) as a confidential informant, but the unit had stopped using him about a year prior.   Petitioner set up Jackson with YCMDEU, which arrested Jackson, who told officers about his foregoing agreement with Petitioner.   After being Mirandized, Petitioner waived his rights and gave a voluntary verbal statement confirming the drug conspiracy and his involvement in it. After he was arrested and bonded out of jail, Petitioner called Jackson, who tape recorded a conversation in which Petitioner further implicated himself in the drug conspiracy.

II.    Procedural Background

Petitioner was indicted by the York County grand jury in December 2004 for trafficking cocaine. [Entry #34-3 at 58-59]. He was represented by Gary Lemel, Esq. at a trial on September 8 to 9, 2005 before the Honorable John C. Hayes III. [Entry #34-1 at 3]. The jury convicted Petitioner, and Judge Hayes sentenced him to 25 years. [Entry #34-3 at 56].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Joseph L. Savitz III of the South Carolina Office of Appellate Defense who filed an *Anders*[1] brief raising the following issue: whether "the trial judge committed reversible error in failing to instruct the jury on the defense of entrapment." [Entry #34-3 at 63]. Attorney Savitz certified to the court that the appeal was without merit and asked to be relieved as counsel. [Entry #34-3 at 67].

In Petitioner's *pro se* response to the *Anders* brief, he raised the following issues: (1) did the trial judge commit reversible error in failing to instruct the jury on the defense of entrapment; (2) was there a constructive amendment to the original indictment denying appellant a fair trial; (3) did the trial court error in failing to suppress appellant's alleged

---

[1] *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

statement; (4) did the trial court error in failing to grant a requested direct verdict motion; (5) was there a violation of United States Code of Laws, Title 18, Sect. 201(c)(2) in this case; (6) did the trial court err in failing to replace juror number 204; and (7) did the trial court err in failing to give a requested lesser-included offense instruction to the jury. [Entry #34-6 at 5].

On January 14, 2008, the Court of Appeals filed an unpublished decision dismissing Petitioner's appeal pursuant to the *Anders* procedure and granted appellate counsel's motion to withdraw. [Entry #34-7]. Petitioner unsuccessfully sought rehearing. [Entry #34-8; #34-9]. Petitioner filed a pro se petition for writ of certiorari with the South Carolina Supreme Court in which he raised the following issues: (1) did the trial judge commit reversible error in failing to instruct the jury on the defense of entrapment; (2) was there a constructive amendment to the original indictment denying the Petitioner a fair trial by the court; (3) did the Court of Appeals err in holding that this action is not a violation of the United States Code of Laws, Title 18, § 201(c)(2), along with § § (c), (d), (e), (h), and (i) in the instant case; (4) did the Court of Appeals err in not setting aside the verdict and granting a new trial; (5) did the court have jurisdiction to try Petitioner on "trafficking" as his crime was "conspiracy." [Entry #34-10]. The South Carolina Supreme Court denied the petition on September 4, 2008. [Entry #34-11]. The remittitur was issued on September 8, 2008. [Entry #34-12].

Petitioner filed an application for post-conviction relief ("PCR") on April 29, 2009, in which he alleged ineffective assistance of counsel. [Entry #34-3 at 72-81]. A PCR

evidentiary hearing was held before the Honorable Lee S. Alford on December 2, 2009, at which Petitioner and his counsel, Leah B. Moody, Esq. appeared. [Entry #34-3 at 88-98; #34-4 at 1-64]. On January 25, 2010, Judge Alford filed an order of dismissal. [Entry #34-4 at 65-78]. Petitioner timely appealed from the denial of PCR. [Entry #34-13].

Appellate Defender Robert M. Pachak of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented Petitioner on appeal and filed a petition for writ of certiorari in the South Carolina Supreme Court on July 6, 2010. [Entry #34-14]. The petition raised the following issue: "Whether defense counsel was ineffective in failing to object to that portion of the solicitor's closing argument that vouched for the credibility of the State's key witness?" [Entry #34-14 at 3]. The Supreme Court of South Carolina denied the petition on September 9, 2011. [Entry #34-16]. The remittitur was issued on September 27, 2011. [Entry #34-17].

Petitioner filed this federal petition for a writ of habeas corpus on October 20, 2011. [Entry #1].[2]

III. Discussion

A. Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

---

[2] The petition was received by the court on October 21, 2011 and docketed on October 25, 2011. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack,* 487 U.S. 266 (1988). Petitioner dated his petition October 20, 2011, which is the date his envelope indicates the petition was deposited in the prison mailing system. [Entry #1-3].

**Ground One:**        Actual Innocence/Absence of Evidence

**Ground Two:**        Trial counsel was ineffective for failing to request a jury charge for entrapment.

**Ground Three:**    Defense counsel was ineffective in failing to object to that portion of the solicitor's closing argument that vouched for the credibility of the State's key witness.

[Entry #5-8].

B.     Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate.

Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

   C.  Habeas Corpus Standard of Review

    1.  Generally

  Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts

of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.   State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).   If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.   Failure to do so will result in the application of a

procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States pre Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court *"outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan.*" 559 S.E.2d at 854.   As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its

courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is

barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived the him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential

standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

   D.    Analysis

      1.    Ground Two is Procedurally-Barred

Respondent contends that Petitioner's Ground Two is procedurally-barred to the extent that it was not raised in a direct appeal or PCR appeal.   The undersigned agrees that the procedural bar applies to Ground Two, in which Petitioner alleges that trial counsel was ineffective for failing to request a jury charge on entrapment. While Petitioner raised the issue of the trial court's alleged error regarding an entrapment charge, Petitioner raised no such ineffective assistance of counsel claim.   Therefore, to the extent that Ground Two was not raised in Petitioner's direct or PCR appeal, it was not fairly presented to the South Carolina appellate courts and is procedurally-barred from federal habeas review.   *See*

*Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

>            2.        Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of Ground Two. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, it is procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually

innocent"); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on these grounds. Petitioner had a trial in which he raised no objection, had a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise this issue. However, he failed to raise it, raise it properly, or preserve the issue for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve the issue.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*

The court's review of the record does not support a showing of actual innocence. In fact, Petitioner does not argue he is actually factually innocent, but instead argues he is legally innocent—a claim which by itself, does not meet the actual-innocence gateway. *See*

*Bousley*, 523 U.S. at 622 ("It is important to note . . . that 'actual innocence' means factual innocence, not mere legal insufficiency."); *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.").

In light of the evidence presented at trial, including the information in the Factual Background section above, Petitioner cannot show actual innocence, and therefore, the procedural bar applies to Ground Two.

### 3.    Ground One

In Ground One, Petitioner alleges he is actually legally innocent of trafficking cocaine or engaging in a conspiracy to traffic cocaine. The court notes that actual innocence is not a cognizable claim for federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Id.* ("[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact."). Therefore, the court should deny relief on Ground One as not available in federal habeas.

### 4.    Ground Three

Petitioner's remaining Ground Three alleges that defense counsel was ineffective in failing to object to that portion of the Solicitor's closing argument that vouched for the credibility of the state's key witness. This ground is exhausted, as it was presented in

Petitioner's *Anders* brief.  Specifically, Petitioner argues that trial counsel should have

objected when the Solicitor vouched for Jackson's credibility in closing argument, as

highlighted in the following excerpt:

> His buddy has testified as to what happened, his buddy testified. **I thought about Derrick Jackson, very credible.** [Petitioner] would have you believe that Derrick Jackson was the mastermind, the person in charge, the overbearing person. Listen to the tape. I know you couldn't hear most of the tape when we played it in here but you are going to have it back there in the jury room and you can play it. What you did get as you heard the tape is the relationship. This is the guy with the more overbearing personality. This is the guy in the driver's seat, not the younger man. This is the guy. This is the guy telling the younger man what is going to happen and what is what, telling him, "If we all keep or mouth shut everything is going to be fine." Telling him, "They didn't catch me with drugs so they do not have a case against me."

[Entry #34-3 at 33].

Addressing Petitioner's allegations as to this claim, the PCR court found as follows:

> This Court finds, without finding that trial counsel was ineffective for failing to object to the Solicitor's closing argument, the Applicant has failed to meet his burden of proving he was prejudiced by any failure to make objections during the Solicitor's closing argument. The Applicant has not presented any evidence or testimony that the Solicitor's comments, or trial counsel's alleged failure to object, so infected the trial with unfairness as to entitle him to a new trial. The record reflects the Solicitor's closing argument was not so improper or inflammatory to require a new trial, and the Applicant has failed to present any evidence of prejudice to him as a result of trial counsel's alleged failure to object. Accordingly, the allegation that trial counsel was ineffective for failing to object to the Solicitor's closing argument is dismissed.

[Entry #34-4 at 76].

The PCR court had the opportunity to view the witnesses and judge their credibility accordingly and found trial counsel's testimony to be credible. As the PCR court noted, 'trial counsel explained at PCR that his failure to object during the Solicitor's closing argument was not a "game turning moment" when reviewed against the entirety of the whole trial. [Entry #34-4 at 61]. As the PCR court noted, it is questionable whether the Solicitor's statement even rises to the level of vouching, as it did not attempt to use information outside of the record or the State's prestige as means of enhancing the witness's credibility.

Petitioner cannot satisfy the *Strickland* test. The court cannot find that there was a substantial likelihood the result of Petitioner's trial would have been different had trial counsel objected to the isolated remark, which itself is a questionable instance of vouching. Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground and it is recommended that it be dismissed.

IV.    Petitioner's Motion for Summary Judgment and Hearing

As with his prior motion for summary judgment [Entry #20], which the court denied [Entry #44], Petitioner's pending motion for summary judgment [Entry #52] fails to demonstrate that there are no material facts in dispute such that he is entitled to judgment as a matter of law. Because the motion contains mere allegations concerning his pleadings, he has failed to meet his burden of proof and it is recommended that his motion for summary

judgment be denied.   Further, the undersigned recommends that Petitioner's motion for an evidentiary hearing [Entry #51] be denied.

V.      Conclusion

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [Entry #35] be granted and Petitioner's motion for summary judgment [Entry #52] and motion for an evidentiary hearing [Entry #51] be denied.

IT IS SO RECOMMENDED.

August 28, 2012                                    Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).